Our final case this morning is number 18-1763 American Axle & Manufacturing v. Neapco Holdings LLC Mr. Nuttall Good morning. Pleased to court. Jay Nuttall on behalf of American Axle, the appellant. We're here today to discuss the district court's decision finding claims directed to a method of manufacturing a prop shaft with liners to reduce prop shaft vibration into whether or not those are ineligible patent subject matter. The district court found that the claims were directed to a law of nature, Hooke's Law. Hooke's Law is a mathematical formula that determines the frequency of an object. The claims in this case, as construed by the court, require liners that are specifically designed to not only match but to damp multiple different types of vibration modes, bending modes, shell modes. And the claims require that those liners damp those different modes in different ways. The problem is it really doesn't tell you how to do it, right? It says do tuning, but it doesn't tell you how to do the tuning. Well, both the claims and the spec talk about controlling the characteristics of the liner. And the specification tells you here's what you control. You control the diameter of the liner, the thickness of it, where you place the liner location is important. And it tells you to tune the liner within about 20% or more of the prop shaft mode. Looking at this patent, you couldn't tell how to do it. Someone skilled in the art wouldn't know how to do it. You'd need additional information, right? I disagree, Your Honor. The patent specification tells you what characteristics to control and that the liner has to not only match, but it has to damp these different vibration modes. And those skilled in the art know what bending modes are and shell modes are. And they know that when you put a damper in and you can tell if that damper actually reduces vibration at those modes. And that's exactly what happened in this case. NEAPCO, prior to this invention, was not using tuned liners at all. And they studied the 9-11 patent and they were able to come up with tuned liners from exactly that disclosure. So I do think that the patent teaches one of skilled in the art how to make a tuned liner to not only match the relevant frequency, but also damp those different modes. Well, Claim 22, as I understand your argument in the wear-in clause, contains physical limitations on the liner as well, right? Resistive and reactive absorber for attenuating two vibration modes. And one of skilled in the art would understand, both from the spec and in general, that those are physical limitations on the type of liner that could even be used in this process. That's correct, Your Honor. And in addition to that, that it teaches exactly how the liner is going to damp those different modes. And those skilled in the art understand that to damp bending mode, you need to have a reactive damper that's going to oscillate in opposition to that. You ended up with a very broad claim construction here from the lower court. And in particular, I'm talking about the tuning limitation. You had a very broad claim construction. And you might be up against problems on 102, 103, or 112 with that problem, like what a skilled artisan would understand or enablement. How is it that that, though, turns into a 101 issue in this case? Well, I think that, and that was one of the critical issues I wanted to talk about with the court today. The district court completely eliminated the wear-in clause from Claim 22 and didn't talk about any of the limitations in Claim 1. It does not include a wear-in clause that specifically talks about these different stops of damping the different modes and how it's accomplished. So, if you just look at Claim 2, after the court removed the wear-in clause, which requires the... removed the wear-in clause specifically, expressly said they're not going to give it any weight. While in most cases, parties may dispute about how you characterize claims, in this case, the court expressly said, I'm not going to give the wear-in clause any weight. And therefore, all that was left was this broad tuning term. So, we think that's inappropriate. Those claim terms were construed. The court gave those terms, meaning tuned reactive absorber requires damping of bending mode in a certain way. So, you understand the tuning limitation to be limited by the wear-in clause because you know specifically, to a pretty high degree of certainty, specific information about the type of liner that's going to be used by virtue of the wear-in clause. And that, therefore, otherwise narrows the tune clause. Had the wear-in clause not been there, tuning could be very, very, very broad. I agree, Your Honor. That's exactly right. And I think that's where the district court went wrong here. And you know, wear-in clause or not, I mean, Claim 1 does not have a wear-in clause. And it specifically recites these different limitations about the liner having to damp bending mode vibrations, the liner being positioned to damp... That's just a statement of the result. It doesn't tell you how to do it. I mean, when you look at the specification, it says you have all these variables and your expert said, you know, basically do it by trial and error. You know, change this variable, change that variable, change the other variable. But it doesn't tell you how to change the variables, right? Two quick responses, Your Honor. I think the patent does disclose that it tells you how to tune the liner to a certain percentage. It tells you which variables to change, and there's not that many. It tells you where to place the liner depending on where the bending mode is. The issue and the argument that NEAPCO has made is that there's not a specific... None of that is new. I mean, there were liners, there were changes to the liners to make them dampen, right? That was not new. Well, the liners had never been used to damp bending mode, which requires that they be tuned to have a certain frequency in damp bending mode by oscillating in opposition to them. Prior to this invention, people would shove cardboard into the prop shaft to try to keep the shell mode from... to damp the shell mode vibrations. But nobody had ever tuned a liner to have it specifically damp of bending mode or be able to damp multiple different modes. These prop shafts, each prop shaft is different. They're different lengths, they're different widths. So they have bending mode vibrations at different frequencies. You can't say, build this one specific liner and it will fit for every prop shaft. But what is easy to do, is easy for NEAPCO to do, is to take this disclosure and say, here's the prop shaft, we know the bending mode frequency is at 300 hertz. I'm going to build a liner that damps bending mode at 300 hertz with these specific characteristics. I'm going to put it in the location so it will damp that bending mode. And so the claims do require that. The claims as construed require controlling characteristics so it has those properties. It requires a location so that it damps those different modes. And that was all new and different, and liners had not been used for that. What's the difference between, let's just use the claim construction meaning of tuning. Tuning is controlling the characteristics of. That's all tuning means, right? And then the where in clause and the various references to the two kinds of dampening. What's the difference between, if you substitute control the characteristics, you're saying controlling the characteristics so that a dual damping result follows. Why is that different from the kind of result only, no means specified claim that has been troubling for 150 years? Sure. To one quick point, claim one, as the tuning requirement was construed to be, controlling the characteristics to configure the liner to match relevant frequency to reduce two types of vibration. So it is a little bit different than the claim 22 construction. It says do something with material to produce either of two different, or both of two results. One to soak up a kind of frequency and the other is to counteract it like noise canceling headphones. It tells you to specifically build a liner that is built with the right length, width, diameter, frequency, put it in the right location, and use that to damp bending mode and shell mode vibration. It's not just a result. You have to make a specific liner that does that. But why is that? I guess here's what I'm struggling with. Ever since Leroy and O'Reilly against Morse, there's been a line, which has become a 101 line, even if it wasn't originally a 101 line, between saying I want something that has a certain property and I claim anything that has that property, which is a bad kind of claim, and a claim that says here is something about how I get that property. Why is this on the right side of that line? Yes, Your Honor. So the claim does not just say we're claiming a liner that has a certain frequency or we're not claiming Hooke's Law where you determine the frequency of a liner. You're claiming a liner that performs two functions, soaking up one kind of vibration and counteracting another. Right. We're claiming a method of manufacturing a prop shaft, so you have to know you have to have the prop shaft first and then the liner that is going to not only match with the frequency but is also going to damp those different modes. And in order to do that, you have to build a specific liner to accomplish that. So it's not a broad concept of, you know, any sign or some of the older cases that talk about the general concept. This is a claim more like sales direct or exergen, where even if you assume that Hooke's Law has some application to the claims, the claims have a method of producing a prop shaft that results in a new and different result that hadn't been achieved before. And uses characteristics other than mass and stiffness, which are the only factors in Hooke's, to decide how to make that work. For example, location, right? Correct. I mean, you articulate all that in a string state, but I don't want it to get lost in this discussion, which is this could very well employ Hooke's Law, but it also employs other characteristics in the choice of liner and location within this system to operate properly, none of which are utilized. They don't have a variable in Hooke's Law for location and all of that, and all of that is critical and is specifically articulated in the claims. That is correct. That was the other point I wanted to make before I step down and say the rest of my time. But basically it's done by trial, and you start with a computer program and then you do trial and error to come to the correct result, right? Well, we would say you'd start with making a liner, and you would test the liner. And just like Niapco did in this case, they created a liner log, and they said after two months, this is great. This one works best because we've got the right thickness, we have the right diameter, and we've picked the right characteristics that are disclosed in this pattern. How are those characteristics determined by trial and error, use of a computer program? What does the record tell us about that? The record tells us that those skilled in the art test the actual prop shaft and damper to see if it actually damps vibration. And so that's what the parties did in this case. And adjust it? Yes, you could adjust it if the damper doesn't work. And so what Niapco had before was an untuned liner that they put in and didn't get the results that they wanted. They looked at the patent, they changed the characteristics to get the exact physical characteristics that they needed to damp the relevant modes. And the claims do talk about that, and Hooke's Law does not inform all those other elements like liner shape and mode, location of the liner, fitness, interference fit, things like that. So with that, unless there's other questions now, I'd like to reserve a little time for rebuttal. Okay. Thank you, Mr. Trottel. Thank you, Mr. Trottel. Good morning. May it please the Court. Dennis Abdener on behalf of Abilene, the Niapco parties. I want to start and pick up where you left off. This is a claim to a goal, the result. And that is, and it's defined in the background of the invention, which is the idea of tuning a liner to dampen two different modes of vibration. The where-in clause is what American Excellus pointed to as the inventive concept. In other words, tuning to two different vibration modes. But that's, as the District Court correctly recognized, that is simply the result. That is what happens once the methodology is fully performed and achieved. And so when you do look at the methodology, what you're left with is taking a liner, taking a prop shaft, and putting the liner inside the prop shaft. And above that, you have the direction to tune it. Tuning, as recited in the claims, is the idea of changing a mass, an object's mass or its stiffness, in order to alter its frequency. That is nothing more than Hooke's Law with the direction to apply it. I mean, your problem with us not thinking of Hooke's Law with the direction to apply it is that Hooke's Law may have variables that represent mass and stiffness, but they don't have variables that represent all those other characteristics which are at issue in these claims, like positioning the liner. And he listed four or five different characteristics. I can't express that facility with it that he has, but he articulated them all. And that's not Hooke's Law. Those are different from Hooke's Law. Yet they're characteristics that go into helping to achieve the claimed invention. Two responses to that, Your Honor. First is the record shows that mass and stiffness are the two variables that matter. And when you look at the various other characteristics within the specification. No, the claims expressly say positioning matters, as does the specification throughout it, that the location matters as well. Well, positioning without any other information about how you do it, and it simply says positioning the liner within the axis. In each scenario, all the criteria matters, right? I mean, you know, your mass matters, your height matters, your width matters. You know, everything matters. I mean, this result is achieved not just by varying two variables which happen to appear in a particular formula. This result is achieved by specifically limiting a lot of different characteristics. Well, and those characteristics may have been recited in the specification. There are a lot of them. And in the claims. The characteristics are not recited in the claims other than mass and stiffness. It only says positioning the at least one liner in claim one. That's not a location limitation? It's a method. It doesn't tell you where inside the prop shaft to place it. It simply says position it with inside. And the meat of this claim is the tuning limitation. That's been the focus of the party's dispute below. Let me turn to the inventor's testimony in this case. My problem is you'd like me to just disregard the where in clause altogether in claim 22, and I personally think it provides physical limitations for the claim and don't think it can be disregarded. So, yeah, I take out that where in clause of claim 22. Claim 22 is a heck of a lot broader, and you've got a much easier case. Well, and respectfully, the question of how broad the where in clause is, I think the district court was correct in saying it is nothing more than the result. And if you look at claim 8 of the patent, I think this characterizes how broad the where in clause is. Claim 8? I'm sorry, column 8 of the patent. That's at A33. At about lines 24. Tuning, this is the discussion of how you tune, and it says in certain situations it may not be possible to exactly tune the liner to two or more relevant frequencies. Next sentence, it says, as such, it will be understood that a liner will be considered to be tuned to a relevant frequency if it is effective in attenuating vibration at the relevant frequency. Down below, around line 44, is another example. The liner can be considered to be tuned to a relevant shell mode frequency if it damps shell mode vibration by an amount that is greater than or equal to about 2%. And so the tuning is defined effectively as the result that you're hoping to achieve. That's the goal. Judge Morton? I'm sorry, does that build in to the term tuning, the question of where the liner is located? Where the liner is located is actually, and this is probably directly to... If you have trough crest misalignment, it's just not going to do the job. Because you need to have those subtract each other. So does that suggest that placement, the right positioning, is part of what it means to tune? At the top of column 8 of the patent, again at A33, it does refer to the location of the liners within the shaft member. And that entire paragraph within the patent is a discussion of what it is to tune. It's not a discussion of what the positioning limitation in the claims is. So location of the liner is something that is within this concept of tuning. So time out, if location of the liner is within the concept of tuning, can you tune a liner without adjusting its mass or stiffness to achieve these results? Absolutely, you can't say no because it's a matter of technology. Yes, of course you can. If you already have a certain mass and stiffness, and you just move the location, that would be tuning. I would agree in some respect. In another respect, the location of the liner may affect the form fit and the stiffness of the object. So in some sense, it does go back to trial and error. It may, but it also may not. You can tune a liner in this case to achieve the results in the claims simply by relocating it, can't you? Respectfully, I disagree because the claim construction is changing characteristic. Of the liner. You start with the liner, the claims say tune it, and then you have a result within the claim. So you have the goal, you know what you're trying to achieve, but you don't know how to do it. And if you take any number of these different characteristics, there's nearly a dozen of them, what you have is trial and error. And the only two of those characteristics of which there's nearly a dozen are mass and stiffness that are included within Hooke's Law. See, my problem with this isn't that these claims are broad, they're broad. I grant you, they're broad. I don't love the kind of broad claiming that I see here. My problem with this is trying to fit it within the umbrella of 101 as opposed to letting you slap it down under 103 or 112. My problem with this is that the district court put all his eggs in the Hooke's Law basket. Hooke's Law only involves two variables. There's a lot more in these claims than those two variables which control the ability to have it perform consistent with the result part of the claim that you articulate in the wear-in clause or in Claim 1 as in maybe the last element. So there's more than just mass and stiffness. There's more than just Hooke's Law at stake here. So I'm not positive this kind of claim, for me, with all these other criteria, fits neatly into the 101 box. This feels more like diamond versus deer to me. The use of a formula as one component in a manufacturing process. Right. And, Your Honor, to your question, the record shows that these other characteristics and put positioning to the side, but these other characteristics go to mass and stiffness. It goes to Hooke's Law. But even if that, I'm not sure that Chief Judge Stark got it right by saying that this is just a question of implementing Hooke's Law. There are other variables which can be taken into account here which seem not to relate to an implementation of Hooke's Law. And a diamond versus deer makes clear the fact that you're implementing a particular law anyway isn't determinative of 101. And the real question here is do we have anything more than a result here? Even if you use all these different variables, it doesn't really tell you how to use the variables and that's the problem. It's just a patent on a result rather than a description of a method of how to do it. That's exactly right. And so the result is, and the breadth in which the result is claimed is any effective vibration in show mode, any effective... When you say that is exactly right, just to be clear, Judge Dyke articulated a completely different rationale for getting to the same result than did Judge Stark. And he started by saying, the beginning of his question was, I'm not sure Judge Stark got this right. And so your answer was, that's exactly right, Judge Dyke. I just want to point that out to you. For the record, you're going to understand, if I cut and paste portions of this oral argument, his question began, Judge Stark didn't get it right and you said that's exactly right. So I want to give you a chance to rehabilitate yourself so that I don't do that to you. And I don't want you to do that to me. So I think what you're... Judge Dyke, your articulation is the second half of Judge Stark's opinion where he goes through electric power and he says, and he looks at the Waring Clause and he says, truly this claim is to a result. And so we're here and we're defending Judge Stark's opinion on the front end as well. When you look at the methodology, it does not tell you how to get to the result. So this truly is within electric power. It's like Claim 8 in the Morse case. And you have a result that is broadly stated and you have a direction to tune it at an abstract high level of generality without anything more other than this conventional methodology of taking a liner, taking a prop shaft and inserting the liner into the prop shaft, which the background of the patent and the specification says... The mass and stiffness of the liner both go to manufacturer of the liner. I'm sorry. The mass and stiffness of the liner both go to the manufacturer of the liner. You're not shaving off its mass on site when you're installing it, right? The manufacturer of the liner... Manufacturer of the liner. ...determines the mass or stiffness. Absolutely. Now let's move to Red Brief, page 30. Red is you, right? You're Red, correct? Yes. All right, because on Red Brief, page 30, you agree with American Axle's expert that tuning can be achieved in either the design, the manufacturer, or the installation of the liner.  So that would be positioning. Installation is positioning. Installation isn't mass and stiffness because that's manufacturer of the liner. And that's what their expert says. They're Mr. Ron on page 169 of the appendix. And you agree with that in your Red Brief that tuning can be achieved through any of those modifications. And the response is, that truly illustrates how broad these claims are. If it could be the design, the manufacturer, or the installation. And back to the claim saying positioning the liner doesn't tell you how to install the liner. Yes, but once again, what Judge Stark said here is this all boils down to Hooke's Law, and this claim is just preempting Hooke's Law in this space. And you've agreed in your brief that tuning can be achieved through installation, which has nothing to do with an impact or alteration of mass or stiffness of the liner, which means it's only positioning. I don't see how a claim that is a manufacturing claim, which can be achieved through a variable not included in the Hooke's Law equation, boils down to an application of Hooke's Law. And again, I think the methodology there is, is it conventional, what was done before? And positioning liners and prop shafts had been done for decades before. And do these claims tell you how to achieve the result? But we're trying to figure out whether this is an abstract idea. The fact that some of the steps have been done before isn't relevant to whether it's an abstract idea. On the second part of the Alice Mayo step, that's what you're looking at. Yes, but that's not what we're talking about when we're discussing Hooke's Law, is it? We're talking about, is this directed to an abstract idea? And if it's not directed to an abstract idea, we don't get to the second part, so it doesn't matter whether those things are. And Your Honor, I think Judge Stark's opinion does boil down to two different concepts. It's a natural law, not abstract idea, sorry. The second portion of it... It is an abstract idea, not a natural law. Well, Judge Stark found at the end of his opinion at page A-16, this claim boils down to the application of a natural law to a conventional method to achieve, and this is the electric power in Morse, to achieve an abstract solution. Yeah, but the application of the natural law that he cited was Hooke's Law, and you admit in your red brief that tuning can be achieved simply through positioning, which has nothing to do with Hooke's Law, so it's kind of hard for me to reconcile that. Well, again, we go back to the idea that tuning is so broad that you don't know how to achieve the result, so what it boils down to is Hooke's Law is the relationship... The more variables there are, the more difficult it is to know how to do it, and the more guidance that's needed, and there's none as to the use of all these variables other than just use a lot of variables and figure it out. Doesn't that feel a lot like enablement? That really doesn't feel like 101, does it? And we go back to the Morse case. That was actually almost the exact articulation of what it means to enable a patent, what Judge Deichter said. And Judge Moore and I agree that there are other problems with these patents, but the Supreme Court says 101's a threshold issue. The Morse case looked at this specific problem of breadth and preemption, which does underlie sexual... How does this preempt Hooke's Law? This preempts Hooke's Law in the particular... That's the only thing we're talking about. The only natural law we're talking about here is Hooke's Law. It's the only thing that's at play. And it preempts... It is so broad by claiming just the results and saying tune the liner, it preempts the use of any automotive engineer from taking a liner and doing any sort of trial and error analysis or even accidentally taking a liner and putting it inside a prop shaft because if by chance, by happenstance, it reduces vibration more than one mode, American Axles claims would say we're covered. We have the whole solution and it does not matter how you get there. Whether or not you position it correctly, whether or not you change characteristic A, B, or C, the mass or the stiffness, you're still getting to a result which is abstract in and of itself. Okay. Thank you, Mr. Allen. Thank you. Mr. Nuttall? Yes. Thank you, Your Honor. A few quick points that I'll try to make. I agree the claims have nothing to do with Hooke's Law and I think they're far too close from that. They have nothing to do with it. It's just my view that it's not sufficient to say that it's an application of Hooke's Law. It's more complicated than that. But it seems to me perhaps no less abstract. It gives you a... It doesn't tell you... The claims themselves don't even provide you with a list of variables. There are a lot of different variables. It's done by trial and error. And all the claims are telling you is here's a desirable result and use trial and error to get there. Well, I think the patent does talk about the different characteristics that you control. The claims talk about not only specific locations you put it at, antinodes for specific modes. The dependent claims also include that they have to be directed to the second bending mode or the second shell mode. There are a lot of specific elements in those claims as well. Just to hold on for a second. So I understand some of the procedure. And if we go over, I will... for my presiding judge to give you extra time. But was there an agreement as to representative claims in this case? There was no agreement, Your Honor. In fact, the court ordered specific briefing for both Claim 1 and Claim 22. And so there was definitely no... But beyond Claim 1 and Claim 22, you don't feel like, even if I thought that Claim 22, which is probably your broadest claim, was, if it's not representative, I can look at the other claims in the patent too. You did not accede to the idea that everything stood or fell together. That's correct, Your Honor. Because you're pointing now out Claim 8 or other things. You're wanting to point out... or not claiming it, but you're wanting to point out to us elements of other claims in response to Judge Ike's question. So none of those were given away. That's correct, Your Honor. They weren't given away, but they weren't argued in your blue brief either. Oh, they were, Your Honor. Well, we certainly argued about Claim 1, Your Honor. Well, yes, but I don't... I didn't see in the blue brief separate argument about features of the dependent claims. Well, we certainly talked about the location of the liner that's in our briefs and talked about it at length. We talked about that just because you have a liner's frequency that matches a prop shaft frequency, that doesn't mean it will damp that. The evidence... Where does the blue brief suggest that the other claims should come out differently? I'm not suggesting that the other claims should come out differently. I'm just suggesting that the other dependent claims include these expressed limitations to provide even more detail. Okay, well, let me ask another question, if you don't mind. This case has at all times been about natural law, has it not? Yes, Your Honor. At no point did the district court suggest this was an abstract idea. That's correct. If we were suddenly going to, in the first instance, on appeal, without ever having it happen below, decide, ah, well, you know, Judge Stark got it wrong on this whole natural law thing because Hooks is limited to these two limitations, and this is instead an abstract claim because of the breadth, might you have different arguments with regard to the claims here in front of us and the dependent claims that you would really like an opportunity below to be able to express, should Judge Dyke want to change the entire rationale for the decision? Yes, Your Honor. Can I just ask you, can you address yourself to page 4604 of the appendix in which Neepko says, the asserted claims attempt to claim the abstract idea of a solution to the problem in general as opposed to a particular solution, which I think is Neepko's opposition to your summary judgment of 101 validity. Doesn't that seem to raise the question? I realize Judge Stark, Chief Judge Stark, did not make this an abstract idea case, but I'm not sure whether there's a substantive difference between what he said about result versus means and what was said here, which appears to be an assertion of the abstract idea category, though admittedly, in the second part of the analysis. Right, and step two, I mean, clearly their briefs and their expert reports were directed at laws of nature. They, in fact, claim there were two laws of nature that the claims were directed to, Hooke's law and friction. But their briefings seem to evolve from initially something that was, this is Hooke's law, full stop, into when they got to this, something that started featuring more this idea about this is result only. But I respectfully don't believe they ever argued that this was an abstract idea relating to matching. This is in the second step of the analysis where they're quoting one case that happens to use the word abstract idea. It was not in their briefing or their expert reports. It certainly wasn't in Judge Stark's opinion that he ever found that this was an abstract idea. And what do you think the difference would be in what kinds of arguments you might make if the theory of analysis were starting with Leroy and O'Reilly and Tillman through about 10 cases now here that one might summarize as using the electric power idea that this is results only and you haven't specified the means. Right. So we still believe the claims are patentable, but obviously that issue hasn't been fully briefed. Right, but I'm asking what is there that there might be, even might be to say that hasn't been said. Well, electric power is very different than the facts in this case where they said you're... Forget about electric power. We're talking about the idea of let's just talk about the mid-19th century Supreme Court cases if you want. There are now about a dozen cases in this court that focus on results versus means in a lot of different contexts. And the mid-19th century cases are in the physical product cases too. Right. And I believe this case is more like Deere, CellsDirect, and Exogen where they've said even if the claims use some kind of abstract idea or natural law, they're using that as part of a method and stops to achieve it. Everything in that line of cases churns on whether there is some allegedly new and different advance that is a concrete way of doing something. And at least what I'm listening for and have been focused on throughout this, is there something like that here or is it only make and place a liner so that two damping effects occur? You figure out how. That seems to me kind of the question that we're struggling with. Well, the specific solution in this case are liners that are disclosed in the patent and it's told you how you make the liner. So there is a specific solution. It's not just you put something in the prop shaft and you get a result. You have to actually design the liners with these different characteristics. And to be clear, don't your dependent claims actually explain a lot of that? I mean, let's see, claim 13 talks about how you have to have a resilient member extending helically. There's another claim that talks about how there has to be a drive system that operates below 600 hertz. There is, it just seems like there are claims all over the place, small little dependent claims. One that says that the material has to be selected from certain types of carbon fiber. There are, I mean, it just seems to me that you have a lot of dependent claims that add a great degree of specificity to characteristics of, physical characteristics of the liner in the system. Is that fair? That is correct, Your Honor. And I think it's different than some... Did you assert that any of that was something other than in the prior art? All of that stuff? Well, I think all of those things in the context of these claims is different than the prior art because liners had never been able, never been tuned to damp bending mode vibrations before. Dampers couldn't damp multiple different vibrations before. In the prior art, they would have to use different dampers to use for a bending mode and a different damper for a shell mode. So this solution, this tuned liner that is tuned to not only damp but match these different frequencies was a different solution. And I think under those cases it's not invalid as ineligible subject matter under the old cases that you referred to, Your Honor. Okay, anything further? No. Okay, thank you, Mr. Nuttall. If there's a case that's submitted that concludes our session for this morning.